UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

**EQUAL EMPLOYMENT OPPORTUNITY**
**COMMISSION**                                                                 **PLAINTIFF**

VS.                                                        CIVIL ACTION NO.: 2:11-CV-201

**LANDAU UNIFORMS, INC.**                                                      **DEFENDANT**

## ORDER

The court presently has before it competing motions for summary judgment filed by the parties in the above-entitled action. The court, having considered the memoranda and submissions of the parties, is now prepared to rule.

This is a Title VII sex discrimination and retaliation case filed by the Equal Employment Opportunity Commission ("the Commission" or "plaintiff") arising out of Tara Smith's November 2009 termination as an employee of defendant Landau Uniforms, Inc. Smith began working, on a temporary basis, at defendant's Olive Branch, Mississippi facility in November 2004, and she accepted a permanent position with the company on January 10, 2005. Smith initially worked in defendant's Value Added department until she was transferred to the Returns Department in May 2009. At the Returns Department, Smith was under the supervision of Jaime McClure, who is the focus of much of plaintiff's allegations of discrimination in this case. In its briefing, the EEOC emphasizes that Smith received no reprimands in the first few months of her tenure at the Returns Department. However, the Commission alleges that, after Smith informed defendant of her pregnancy in August 2009, it began subjecting her to unequal terms and conditions of employment, including frequent reprimands, extensions of probationary period, and a negative performance evaluation. The Commission contends that Smith complained about the unequal treatment on at least

three separate occasions and that her November 2, 2009 termination - ostensibly for poor work performance - was partly in retaliation for those complaints.

On November 4, 2009, Smith filed a charge of discrimination with the Commission, alleging that defendant subjected her to unequal terms and conditions of employment because of her pregnancy and ultimately discharged her because of it. Smith also contended that her termination was in retaliation for her having opposed the discrimination which she allegedly suffered. After completing its investigation, the Commission issued a cause determination on May 5, 2011, agreeing with plaintiff's claim that she had suffered unlawful sex discrimination and retaliation in this case. Plaintiff filed the instant lawsuit in this court on September 27, 2011, seeking both injunctive relief and damages on behalf of Smith. Both parties have now moved for partial or complete summary judgment, and the court will first consider defendant's motion to dismiss the pregnancy/sex discrimination and retaliation claims asserted against it.

To establish a *prima facie* case of pregnancy discrimination, the Commission must show that "(1) [Smith] was a member of a protected class, (2) she was qualified for the position she lost, (3) she suffered an adverse employment action, and (4) that others similarly situated were more favorably treated." *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998). "[T]o establish a *prima facie* case, a plaintiff need only make a very minimal showing." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996). If plaintiff does so, then defendant must articulate a nondiscriminatory reason for its actions, at which time the burden shifts back to the plaintiff to offer sufficient evidence to create a genuine issue of material fact either (1) that the proffered reason is a pretext for discrimination, or (2) the proffered reason, "while true, is only one of the reasons for its conduct, and another motivating factor" is retaliation. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011).

After considering the briefing of all parties, the court is of the firm view that this case is one for resolution by a jury. The fact that the Commission evaluated plaintiff's claims and found merit in them is, of course, not dispositive regarding the summary judgment issues, but, at the same time, the court is not required to ignore this fact either. The Fifth Circuit considers Commission determinations of reasonable cause to be presumptively admissible because they are "so highly probative of [discrimination] '[that [their probity] outweighs any possible prejudice to defendant.' " *McClure v. Mexia Independent School District*, 750 F.2d 396, 400 (5th Cir.1985) (*quoting Smith v. Universal Services, Inc.*, 454 F.2d 154, 157 (5th Cir.1972)).

Quite apart from the Commission's reasonable cause finding, it is apparent that, to an unusual degree, the strength of each party's proof in this case depends upon the factfinder's evaluation of the credibility of witnesses and of rather subjective matters such as the quality of Smith's work performance. Indeed, much of plaintiff's proof of sex discrimination in this case includes her evaluation of how she was treated by her supervisor McClure before and after it was discovered that she was pregnant. For example, plaintiff writes in her brief that:

> After McClure learned that Smith was pregnant, McClure's treatment and attitude toward Smith changed significantly. McClure refused to engage in conversation with Smith and refused to answer Smith's work-related questions. McClure also began to intensely scrutinize Smith's work and began to claim that Smith was making coding errors, even though Akins was using the codes in the same way. On August 24, 2009, Smith contacted Elaine Vowell (Defendant's Controller and McClure's direct supervisor) by email and requested a meeting to discuss McClure's treatment of Smith. Smith met with McClure and Vowell on or about August 25, 2009. During this meeting, Smith complained that McClure was treating her unfairly since McClure found out Smith was pregnant on August 7, 2009. Specifically, Smith complained that since she informed McClure of her pregnancy, McClure would not answer questions and would not talk or interact with Smith the way McClure had done before, and the way McClure still did with Akins. Smith also informed Vowell that she had not been properly trained. During this meeting, McClure claimed that she would train Smith. However, McClure continued her treatment of Smith, and refused to interact with Smith or answer her questions.

In the court's view, an assessment of the accuracy and reliability of Smith's perceptions in this regard

is a matter for a jury.

The court similarly finds jury issues in defendant's assertion that it disciplined and ultimately fired Smith based on her poor work performance. In its brief, defendant sets forth in great detail specific instances of what it alleges to be poor work performance on Smith's part, but the Commission disputes the accuracy of much of defendant's proof in this regard. Clearly, whether Smith's work performance was deficient on a particular occasion is a fact-intensive inquiry, and, at this juncture, this court is required to view the facts in the light most favorable to plaintiff, as the non-moving party. The court also notes that much of defendant's proof in this regard is subjective, such as its assertion that Smith "failed to show initiative or willingness to learn from her mistakes" and that "she giggled in response to corrective instruction." Clearly, the significance of plaintiff's alleged "giggling" in response to instructions is something which a jury can only evaluate, within the context of the proof in this case as a whole.

While the court thus finds triable jury issues in this case, it would hasten to add that it does not regard this as being a "slam dunk" case of discrimination or retaliation by any means, since defendant does have evidence which might lead a jury to conclude that plaintiff was simply not an effective employee. Indeed, it strikes this court that if the jury believes defendant's fact witnesses then it will likely rule for it, and if it believes plaintiff's fact witnesses, then it will rule for it.[1]

For its part, this court's duty is simply to allow the jury to do its job, and it sees no basis for

---

[1] The court notes that some of plaintiff's potentially strongest proof- her assertion that McClure told a co-worker that Smith would not have been hired if it was known that she was pregnant - is the subject of a hearsay challenge. The court will accordingly not consider this proof at this time, although it at least seems possible that this statement will be found to be a non-hearsay admission by a party opponent.

4

depriving plaintiff of the opportunity of presenting its case to the jury.

The court now turns to defendant's motion for summary judgment as to plaintiff's retaliation claim. To present a *prima facie* case of retaliation, the Commission must show (1) that Smith engaged in protected activity; (2) that she suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse action. *Richardson v. Prairie Opportunity, Inc.*, 470 Fed. App'x 282, 286 (5th Cir. 2012). Assuming that such a *prima facie* case is made, the burden shifts to the defendant to articulate some nonretaliatory reason for its action. Once the defendant has done so, plaintiff must offer sufficient evidence to create a genuine issue of material fact either (1) that the proffered reason is a pretext for retaliation, or (2) the proffered reason, while true, is only one of the reasons for its conduct, and another motivating factor is retaliation. *Smith v. Xerox Corporation,* 602 F.3d 320, 330 (5th Cir. 2010).

Defendant acknowledges in its brief that, under the Fifth Circuit' decision in *Smith v. Xerox*, the "plaintiff in a retaliation case based on circumstantial evidence may use a mixed-motive theory to prove its case." The Fifth Circuit's holding in *Smith* significantly reduces plaintiff's burden of proof on her retaliation claim, and, as with plaintiff's discrimination claim, the success of its retaliation claim will likely depend upon the jury's evaluation of the credibility of the witnesses. As to its claim that Smith engaged in protected activity in this case, plaintiff argues in its brief that:

> Here, Smith engaged in protected activity on at least five separate occasions. On August 25, 2009, Smith complained to McClure and Vowell that McClure's treatment had changed since McClure found out about Smith's pregnancy. On September 9, 2009, Smith informed Vowell that her complaint was ongoing, that McClure still would not answer her questions, would not speak to her, and that Akins was receiving more favorable treatment and had not been disciplined or written up, even though Akins' performance was substantially similar to her own. Smith made this same pregnancy discrimination complaint to Nolan in early-September 2009, and informed Nolan that McClure had started making her file on the bottom drawers. On September 29, 2009, Smith informed Vowell that McClure's treatment had gotten worse since Smith complained of discrimination in their previous meetings. After being subjected to less favorable treatment and multiple disciplinary actions, Smith

5

>took her complaint to Nat Landau on October 30, 2009. Under these circumstances, Smith had a reasonable belief of pregnancy discrimination, especially given McClure's sharp change in treatment immediately after learning Smith was pregnant. Smith was being singled out for discipline, even though Akins made coding and entry errors and was never disciplined.

Plaintiff also argues that, given the close time proximity between Smith having engaged in protected activity and her termination, an inference of retaliation can be raised. Specifically, plaintiff argues that:

>In this case, Smith first complained of pregnancy discrimination to McClure and Vowell on August 25, 2009, and Smith was issued a negative Performance Evaluation and placed on probation within three days. Smith complained to Nolan in early-September and again complained to McClure and Vowell on September 9, 2009. Thereafter, Smith was issued a written disciplinary action, by Austin, and her probation was extended on September 29, 2009. As noted above, Defendant's statement that Nolan did not inform Austin of Smith's pregnancy discrimination complaint is false. Nolan testified that she specifically informed Austin that Smith had complained about pregnancy discrimination. After McClure and Austin issued Smith another written disciplinary action and again extended her probation, Smith complained to Nat Landau on October 30, 2009. Defendant terminated Smith on November 2, 2009. The temporal proximity between Smith's protected activity and the disciplinary actions, probation extensions, and termination is very close. In fact, Smith lodged at least five separate complaints of discrimination within approximately two months of her termination. During these two months, Defendant subjected Smith to multiple written disciplinary actions, placed her on probation, and extended her probation twice.

As discussed below, the court agrees with plaintiff that it is able to show a close time proximity between the protected activity and the alleged retaliation in this case.

In its brief, defendant correctly notes that the plaintiff herein is asserting a Title VII "opposition" retaliation claim, inasmuch as it asserts that Smith "opposed" unlawful employment practices and was retaliated against as a result. It is well settled that Title VII protects an employee who engages in protected activity by either opposing an unlawful employment practice or by participating in an investigation or proceeding pertaining to Title VII. *Byers v. Dallas Morning News*, 209 F.3d 419, 427-28 (5th Cir. 2000); 42 U.S.C. § 2000e-3(a). Although not cited by either

6

party, the court notes that, in *Crawford v. Metropolitan Government of Nashville and Davidson County, Tenn.*, 555 U.S. 271, 129 S.Ct. 846 U.S. (2009), the U.S. Supreme Court recently interpreted Title VII's opposition clause broadly in favor of recovery.  In *Crawford*, the Supreme Court held that the protection of the opposition clause extended to an employee who spoke out about sexual harassment, not on her own initiative, but in answering questions during employer's investigation of a coworker's complaints.  In so concluding, the Supreme Court broadly defined the term "opposition," writing that:

> "Oppose" goes beyond "active, consistent" behavior in ordinary discourse, where we would naturally use the word to speak of someone who has taken no action at all to advance a position beyond disclosing it. Countless people were known to "oppose" slavery before Emancipation, or are said to "oppose" capital punishment today, without writing public letters, taking to the streets, or resisting the government. And we would call it "opposition" if an employee took a stand against an employer's discriminatory practices not by "instigating" action, but by standing pat, say, by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons.

*Crawford*, 555 U.S. at 277.  While the facts of this case differ significantly from those in *Crawford*, the Supreme Court's broad interpretation of the opposition clause applies fully in this case.

In seeking dismissal of plaintiff's retaliation claim, defendant notes that it must show that Smith had a reasonable belief that the subject of her complaint was an unlawful employment practice. *Byers*, 209 F.3d at 428.  Defendant further notes that Smith's belief must have been "objectively reasonable" and that her "subjective good faith alone is insufficient" to serve as a valid basis for the employee's complaint. *Byers*, 209 F.3d at 428 (citation omitted).  In arguing that plaintiff had no such reasonable belief that she was opposing an unlawful employment practice, defendant argues as follows:

> Plaintiff alleges that Charging Party complained of pregnancy discrimination on three separate occasions: during a meeting with McClure and Vowell in September 2009, to Anita Nolan on an unspecified date, and to Nat Landau in late October 2009. None of these complaints is sufficient to establish the first prong of the prima facie case for

7

> retaliation, however, because none of them is objectively reasonable. ... Charging Party did not have a reasonable basis for complaining that McClure was discriminating against her because of her pregnancy simply because McClure was pointing out mistakes to her or making her file. There is no evidence that McClure treated any non-pregnant employee who made repeated mistakes over and over again any differently than she treated Charging Party. In fact, the evidence indicates that McClure expected good performance out of everyone she supervised and did not hesitate to let her employees know when they were not meeting performance expectations.

It is thus apparent that defendant's arguments regarding plaintiff's retaliation claim are closely intertwined with its arguments regarding the merits of its pregnancy discrimination claim. The court has already concluded that fact issues exist regarding whether defendant discriminated against Smith on the basis of her pregnancy, and it would thus be anomalous for it to accept defendant's argument that Smith had, as a matter of law, no reasonable basis for making complaints about pregnancy discrimination. The court therefore concludes that the jury should be permitted to decide the issue of whether Smith had a "reasonable basis" for complaining about pregnancy discrimination in this case.

The court also agrees with plaintiff that it has presented sufficient evidence of a close time proximity between Smith's complaints and the alleged retaliation to create fact issues regarding the issue of causation. In arguing to the contrary, defendant apparently seeks to limit the court's consideration of any alleged retaliation to plaintiff's actual termination. As quoted above, however, it is plain from plaintiff's brief that it alleges that Smith suffered other retaliation short of termination, including reprimands and being placed on probation, and it alleges that she was often subjected to such retaliation within days of having made complaints of pregnancy discrimination. In *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), the U.S. Supreme Court held that retaliation includes any actions which "a reasonable employee would have found . . . materially adverse," which includes any adverse action that "well might have dissuaded a reasonable worker"

8

from undertaking the protected activity.[2] This court would likely find a sufficiently close time proximity in this case even if it were to limit its analysis to plaintiff's actual termination, but it is clear that plaintiff alleges lesser forms of retaliation which, a jury might reasonably find, would have been "materially adverse" to an employee in Smith's position. The court therefore concludes that plaintiff has produced sufficient evidence of retaliation in this case to submit its claim to the jury.

The court notes that plaintiff has filed its own, rather unconventional, motion for partial summary judgment, in which it seeks the rejection of a number of affirmative defenses raised by defendant in the answer to the complaint. It is not typical for a motion for partial summary judgment to be used by a plaintiff in this manner, and it is not clear to what extent defendant will even seek to pursue the defenses in question at trial. Defendant's affirmative defenses strike this court as being the type of boilerplate defenses which defense counsel routinely include in answers, such as a defense that "plaintiff's allegations fail to state a claim upon which relief may be granted" and that "to the extent that Tara Smith has suffered compensatory or emotional distress damages, there are intervening causes for such damages other than any actions by defendant." The court has already expressed its view that this case presents numerous fact issues for resolution by a jury, and it has denied defendant's motion for summary judgment on this basis. The court will take the same approach with plaintiff's motion for partial summary judgment, although it will give careful consideration to any arguments which are presented to it at the directed verdict and jury instruction stage of trial. At such time, the court will be in a much better position to evaluate these issues, since it will be able to do so armed with knowledge of what proof was actually presented at trial and what

---

[2]Considered in conjunction with *Crawford*, it is apparent that the U.S. Supreme Court has, in recent years, adopted a rather plaintiff-friendly interpretation of Title VII's retaliation provision. The court is cognizant of this fact in deciding the summary judgment issues in this case.

9

legal issues are truly in dispute.³ In sum, the court believes this is case is a rather prototypical one for resolution by a jury, and it therefore concludes that the motions for summary judgment filed by both defendant and plaintiff should be denied.

It is therefore ordered that the motions for summary judgment [106-1, 110-1] are denied.

So ordered, this the 3rd day of December, 2012.

        /s/ MICHAEL P. MILLS
        **CHIEF JUDGE**
        **UNITED STATES DISTRICT COURT**
        **NORTHERN DISTRICT OF MISSISSIPPI**

---

³The court reaches a similar conclusion with regard to defendant's arguments that plaintiff's damages should be limited in this case based upon after-acquired evidence of misconduct on her part under *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 362-63 (1995) and that it should be barred from recovering punitive damages in this case. These are issues which are best addressed after the court has had a chance to view the evidence at trial.